**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission, | No. CV-00-02260-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Netforce Seminars, et al., | |
| Defendants. | |

Pending before the Court is the FTC's motion for civil contempt sanctions. (Doc. 106.) For the following reasons, the motion is denied without prejudice.

### RELEVANT BACKGROUND

In 2000, the FTC initiated this action, which will be referred to as "the First Action," by filing a complaint that charged Jay Noland with violating the FTC Act by operating a multi-level marketing business called Netforce Seminars as an illegal pyramid scheme. (First Action, Doc. 1.)

In 2002, the First Action resolved with the issuance of a permanent injunction. (First Action, Doc. 66.) In Section I of the injunction, Noland is "permanently restrained and enjoined" from "engaging, participating or assisting in any manner or capacity whatsoever . . . in any prohibited marketing scheme," which is defined elsewhere to include any "pyramid sales scheme." (*Id.* at 3-4.) In Section II, Noland is "permanently restrained and enjoined" from "making . . . any false or misleading statement or misrepresentation of material fact" "in connection with . . . any multi-level marketing program," including any

misrepresentation regarding potential earnings, income, and sales. (*Id.* at 4.) In Section III, Noland is "permanently restrained and enjoined" from "providing to others the means and instrumentalities with which to make" such prohibited statements. (*Id.* at 4-5.) Finally, in Section V, Noland is required, to the extent he participates in another multi-level marketing program, to "take reasonable steps sufficient to monitor and ensure" compliance with the injunction, including "establishing and maintaining a compliance program which includes random, blind testing of the oral representations made by any representative or independent contractor; spot checking of consumers to ensure that no misrepresentations were made; [and] ascertaining the number and nature of consumer complaints;" and also to "investigate and resolve promptly any consumer complaint . . . and to notify the consumer of the resolution of the complaint and the reason therefore." (*Id.* at 6-7.) Although Noland is the only individual specified by name in the permanent injunction, it also applies to Noland's "agents, servants, employees, and those persons in active concert or participation with [Noland] who receive actual notice of this Order by personal service or otherwise." (*Id.* at 3-4.)

Nearly two decades later, in 2020, the FTC initiated another action against Noland. (*FTC v. Noland et al.*, CV-20-47-PHX-DWL.) The operative complaint in that action, which will be referred to as "the Second Action," alleges that Noland, Scott Harris, Thomas Sacca, and Lina Noland (together, "the Individual Defendants") operated a pair of multi-level marketing businesses called Success By Health ("SBH") and VOZ Travel as illegal pyramid schemes, made false statements in the course of operating those businesses, and violated various FTC rules in the course of operating those businesses. (Second Action, Doc. 205.)

In January 2020, the Court granted the FTC's request for an *ex parte* temporary restraining order in the Second Action, which had the effect of freezing the Individual Defendants' assets and appointing a receiver to assume control over the entities that operated SBH and VOZ Travel. (Second Action, Docs. 19, 38.)

In February 2020, following an evidentiary hearing, the Court issued an order

granting the FTC's motion for a preliminary injunction in the Second Action. (Second Action, Doc. 106.) The Court found that the FTC was likely to succeed on the merits of its claims that SBH functioned as a pyramid scheme and that the Individual Defendants misrepresented the income potential of SBH affiliates. (*Id.* at 10-25.)

In April 2021, the legal landscape underlying some of the FTC's claims in the Second Action shifted by virtue of the Supreme Court's decision in *AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341 (2021). There, the Supreme Court held—contrary to the rule that had previously been in place in the Ninth Circuit—that the FTC may not obtain "equitable monetary relief such as restitution or disgorgement" pursuant to its authority under § 13(b) of the FTC Act. *Id.* at 1344. Following this development, the FTC clarified that it is only seeking monetary remedies in the Second Action pursuant to its rules-based claims, which are claims under § 19 of the FTC Act, and is not seeking monetary remedies in the Second Action pursuant to its pyramid-scheme and false-statement claims, which are claims under § 13(b) of the FTC Act. (Second Action, Docs. 351, 365.)

In June 2021, the FTC filed the motion now pending before the Court—a motion for contempt sanctions in the First Action against Noland, Harris, and Sacca (together, "the Contempt Defendants"). (First Action, Doc. 106.)

In July 2021, the Contempt Defendants filed an opposition to the contempt motion. (First Action, Doc. 112.)

In August 2021, the FTC filed a reply in support of the contempt motion. (First Action, Doc. 114.)

In September 2021, the Court issued an order resolving the FTC's motion for summary judgment on liability as to the Individual Defendants in the Second Action. (Second Action, Doc. 406.) As for the § 13(b) claims (pyramid scheme and false statements), the Court noted that although the FTC's theory was that the Individual Defendants had committed violations both when running SBH and again when running VOZ Travel, the Individual Defendants' response only addressed the SBH-related

evidence. (*Id.* at 33-48.) Thus, the Court concluded that even though there were disputed issues of material fact with respect to the SBH-related evidence, the FTC was entitled to summary judgment as to liability on its § 13(b) claims due to the Individual Defendants' failure to address the VOZ Travel-related evidence. (*Id.*)[1] Meanwhile, as for the § 19 claims (rules violations), the Court concluded the FTC was entitled to summary judgment because the Individual Defendants had admitted in their answer to committing the alleged violations and because the FTC's evidence was, at any rate, sufficient to establish liability. (*Id.* at 48-52.)

In November 2021, the Court issued an order denying the FTC's motion for monetary remedies in the Second Action. (Second Action, Doc. 438.) The FTC had sought a total of $1,156,865.50 in damages. (*Id.*) The Court concluded the FTC was not entitled to summary judgment because, "[a]lthough the Court does not foreclose the possibility that consumers suffered some form of cognizable harm from the violations, the all-or-nothing methodology presented in the FTC's motion papers is flawed because it fails to account for the inherent value of the product that consumers ultimately received." (*Id.* at 7.)

## DISCUSSION

I. <u>Legal Standard</u>

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors

---

[1] *See, e.g.*, Second Action, Doc. 406 at 35 ("The Individual Defendants largely ignore the FTC's evidence and arguments related to the VOZ Travel program. Whatever the reason for this approach, it effectively dictates the outcome here—the FTC's initial evidentiary submissions are sufficient to meet its burden of production on the pyramid-scheme claim as applied to VOZ Travel and, because that evidence is essentially undisputed, it follows that the FTC is entitled to summary judgment [on Count One]."); *id.* at 43 ("The FTC is entitled to summary judgment on Count Two for the simple reason that the Individual Defendants do not even attempt to defend some of the categories of misrepresentations identified in the FTC's motion. As noted, the FTC specifically argues that Individual Defendants made false income claims regarding VOZ Travel.").

to demonstrate why they were unable to comply." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999) (citation omitted). "Willfulness is not an element of civil contempt." *United States v. Asay*, 614 F.2d 655, 661 (9th Cir. 1980).

As for remedies, "[j]udicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. Where compensation is intended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947) (internal citation omitted).

II.     The Parties' Arguments

The FTC seeks to hold the Contempt Defendants (Noland, Harris, and Sacca) in civil contempt for violating the permanent injunction issued in the First Action. (First Action, Doc. 106.) As an initial matter, the FTC contends that all three individuals are bound by the permanent injunction because Noland signed it and Harris and Sacca have admitted their awareness of it. (*Id.* at 10-11.) On the merits, the FTC accuses the Contempt Defendants of violating four separate provisions of the permanent injunction. (*Id.* at 11-15.) First, the FTC contends the Contempt Defendants violated Section I of the permanent injunction (no prohibited marketing schemes) by operating both SBH and VOZ Travel as pyramid schemes. (*Id.* at 11-13.) In support of this allegation, the FTC simply proffers the evidence it submitted in support of its motion for summary judgment on liability in the Second Action. (*Id.*) Second, the FTC contends the Contempt Defendants violated Section II of the permanent injunction (no false statements) by making false income representations in the course of operating both SBH and VOZ Travel. (*Id.* at 13.) As for evidentiary support, the FTC once again simply cross-references its summary judgment motion in the Second Action. (*Id.*) Third, the FTC contends the Contempt Defendants violated Section III of the permanent injunction (furnishing means and instrumentalities) via their operation

of SBH and VOZ Travel and again simply cross-references the summary judgment motion. (*Id.*) Fourth, the FTC contends the Contempt Defendants violated Section V of the permanent injunction (compliance) by failing to create a written compliance program, failing to read and thoroughly understand the permanent injunction, failing to perform random testing of oral representations, and failing to promptly investigate consumer complaints and provide notice of the results of the investigation. (*Id.* at 13-15.) As for a remedy, the FTC seeks an award of $7,012,913.25, which constitutes a full refund for all amounts that consumers paid to SBH and VOZ Travel (after an offset for commission payments to consumers). (*Id.* at 15-17.) The FTC acknowledges this figure does not include any offset for the inherent value of the products that customers received and consumed. (*Id.* at 16 ["Consumers are entitled to full refunds—notwithstanding that the products they bought (e.g., coffee, tea) may have had some value—because the misrepresentations and Order violations tainted the purchasing decisions."].)

The Contempt Defendants oppose the FTC's motion. (First Action, Doc. 112.) As an initial matter, the Contempt Defendants argue the FTC cannot rely on the § 13(b) claims in the Second Action to establish violations of the permanent injunction because those claims are foreclosed by law. (*Id.* at 1-2.) On the merits, the Contempt Defendants argue they didn't violate Section I of the permanent injunction via their operation of SBH and VOZ Travel because neither business qualifies as a pyramid scheme (both as that term is defined under Ninth Circuit law and as that term is defined by the injunction). (*Id.* at 2-6.) As for Sections II and III, the Contempt Defendants argue that no false statements were made and that whether they violated these provisions is, at any rate, "a heavily fact-intensive inquiry that requires an evidentiary hearing." (*Id.* at 6-9.) As for Section V, the Contempt Defendants characterize the compliance requirements as "inherently vague" before arguing that they complied with those requirements by holding "daily 'heat calls' with affiliates where, *inter alia*, affiliates were coached and monitored." (*Id.* at 9-10.)

In reply, the FTC begins by noting that the Contempt Defendants submitted essentially no evidence in support of their response and failed to respond to the FTC's

arguments regarding joint and several liability, the provision of means and instrumentalities, and the calculation of remedies. (First Action, Doc. 114 at 1-2.) The FTC also contends that the Contempt Defendants cannot raise any "vagueness" or "ambiguity" challenges to the permanent injunction because Noland stipulated to it and neither Harris nor Sacca moved to attack or clarify it after becoming aware of it. (*Id.* at 2-3.) As for Section I, the FTC reiterates its position that both SBH and VOZ Travel qualify as pyramid schemes under Ninth Circuit law and under the terms of the permanent injunction. (*Id.* at 3-8.) As for Section II, the FTC reiterates its position that the income claims made in the course of operating SBH and VOZ Travel were false and misleading. (*Id.* at 8-9.) As for Section V, the FTC notes that the permanent injunction explicitly required a number of discrete compliance steps, including conducting blind testing, spot checking, and tracking and responding to consumer complaints, yet the Contempt Defendants' response only addresses, at best, one of those steps and fails to rebut the FTC's evidence that the other steps were wholly lacking. (*Id.* at 9-10.) Given this backdrop, the FTC urges the Court to impose a $7 million contempt award without an evidentiary hearing. (*Id.* at 10-11.)

III.   Discussion

The FTC has established that the Contempt Defendants violated some provisions of the permanent injunction. First, the Court already found, in the summary judgment order as to liability in the Second Action, that the Contempt Defendants violated § 13(b) of the FTC Act by operating VOZ Travel as a pyramid scheme, by making false income-related statements in the course of operating VOZ Travel, and by providing the means and instrumentalities to make those false statements. (Second Action, Doc. 406 at 33-48.) Such conduct also violated Sections I, II, and III of the permanent injunction, which prohibited Noland and those in active concert with him (*i.e.*, Harris and Sacca) from operating a pyramid scheme, making false income-related statements in the course of operating a multi-level marketing program, and providing the means and instrumentalities to make those false statements. A finding of civil contempt may flow from these violations

because the relevant provisions of the permanent injunction were "specific and definite," the FTC has clearly and convincingly established the violations, and the Contempt Defendants have made no effort to show they were unable to comply. *Affordable Media*, 179 F.3d at 1239.

The FTC has also established that the Contempt Defendants violated the compliance-related obligations created by Section V of the permanent injunction. As an initial matter, the Contempt Defendants are precluded from arguing that the relevant provisions are vague and ambiguous and the Court concludes that the provisions are not, in any event, vague and ambiguous. *FTC v. EDebitPay, LLC*, 695 F.3d 938, 944 (9th Cir. 2012) ("Defendants' argument fails on multiple accounts. First, because they themselves stipulated to the entry of the Final Order, they cannot collaterally attack the Final Order in contempt proceedings . . . . [Additionally], Defendants' argument proves only that the Final Order is broad, not vague."). On the merits, Section V created a number of discrete requirements, including a requirement to "investigate and resolve promptly any consumer complaint . . . and to notify the consumer of the resolution of the complaint and the reason therefore." (First Action, Doc. 66 at 7.) The FTC has proffered evidence that the Contempt Defendants did the opposite, by affirmatively discouraging consumer complaints and threatening to sue and/or refer for criminal prosecution any consumer who submitted a complaint. (First Action, Doc. 106 at 5-7.) The Contempt Defendants make no effort to address this aspect of the permanent injunction in their response—their only discussion of compliance-related programs concerns "heat calls," which have nothing to do with the investigation, resolution, and provision of notice regarding consumer complaints. (First Action, Doc. 112 at 9-10.)[2] Thus, the FTC has clearly and convincingly established that the Contempt Defendants violated a specific and definite provision of the permanent injunction and the Contempt Defendants have made no effort to show they were unable to comply with that provision. *Affordable Media*, 179 F.3d at 1239.

---

[2] To the extent the response discusses and dismisses "the cabal of complaints that initiated this lawsuit" (First Action, Doc. 112 at 10), that discussion refers to complaints submitted to the FTC, not complaints submitted to SBH and VOZ Travel.

In contrast, the FTC has not established, at least at this stage of the proceedings, that the Contempt Defendants committed certain other alleged violations of the permanent injunction. The FTC's contempt motion is based, in part, on the assertion that SBH constituted a pyramid scheme and that the Contempt Defendants made false income-related statements in the course of operating SBH (conduct that would, in turn, violate Sections I, II, and III of the permanent injunction). However, in the summary judgment order as to liability in the Second Action, the Court concluded that the existence of triable issues of fact precluded the entry of summary judgment in the FTC's favor on those particular issues. (Second Action, Doc. 406 at 33-48.) Because the FTC simply cross-references its summary judgment evidence for purposes of establishing contempt liability, the Court concludes that the FTC has not clearly and convincingly established, at this stage of the proceedings, that the Contempt Defendants violated Sections I, II, and III of the permanent injunction through their operation of SBH. The FTC will need to seek to establish those violations at an evidentiary hearing.

Because the FTC has not established all of the violations alleged in its motion, it follows that the FTC has not established an entitlement to the $7,012,913.25 compensatory contempt award sought in its motion. To calculate that sum, the FTC added together the net revenues earned from both SBH and VOZ Travel. But because the SBH-related violations have not been established, the FTC's requested sum is necessarily overstated.

Given this conclusion, it is unnecessary at this juncture to decide whether the FTC's approach to calculating financial remedies is flawed for other reasons. With that said, the Court notes two potential problems. First, the FTC acknowledges that its calculations do not account for the inherent value of the products that consumers actually received and consumed. (First Action, Doc. 106 at 15-16.) As authority for the proposition that such an offset is unnecessary, the FTC cites *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1993). When seeking summary judgment as to monetary remedies in the Second Action, the FTC pursued the same approach, again citing *Figgie*, but the Court concluded that the FTC's reliance on *Figgie* was misplaced and that "the all-or-nothing methodology

presented in the FTC's motion papers is flawed because it fails to account for the inherent value of the product that consumers ultimately received." (Second Action, Doc. 438 at 7.) This conclusion was driven, in part, by the statutory language of 15 U.S.C. § 57b(b), which only authorizes damage awards for rules violations "as the court finds necessary to redress injury to consumers." Similarly, when calculating a compensatory sanction award in a civil contempt proceeding, the award "must of course be based upon evidence of complainant's *actual loss*." *United Mine Workers of Am.*, 330 U.S. at 303-04 (emphasis added). Accordingly, there is a colorable argument that any civil contempt award imposed in this case must include an offset for the value of products actually received.

Second, in light of *AMG Capital*, there are unresolved questions about the FTC's authority to pursue a compensatory civil sanction based on new § 13(b) violations that also violate an injunction issued in a previous § 13(b) enforcement action (such as the permanent injunction issued in the First Action). To be sure, in *EDebitPay*, the Ninth Circuit held that "district courts have broad discretion to use consumer loss to calculate sanctions for civil contempt of an FTC consent order." 695 F.3d at 945. But in reaching that conclusion, the court relied on earlier Ninth Circuit decisions that recognized the "broad authority" of district courts "under the Federal Trade Commission Act to grant any relief necessary to accomplish complete justice in direct FTC actions, including the power to order restitution to consumers." *Id.* In *AMG Capital*, the Supreme Court held that district courts do not, in fact, possess authority under § 13(b) of the FTC Act to order restitution or other forms of monetary relief to consumers and expressed skepticism toward earlier Ninth Circuit decisions interpreting § 13(b) as empowering district courts to achieve "complete justice." *Id.* 1345, 1348. Given this backdrop, it is unclear whether *EDebitPay*'s statements regarding the FTC's authority to obtain a compensatory sanction award on behalf of consumers via the law of civil contempt remain good law.[3] The Court expresses

---

[3] In an order issued in the Second Action before *AMG Capital* was decided, the Court suggested that *AMG Capital* would not impede the FTC's authority to obtain monetary relief in the First Action. (Second Action, Doc. 242 at 7.) Now that *AMG Capital* has been decided, and the Supreme Court has fully laid out its reasoning for curtailing the FTC's authority to pursue monetary remedies under § 13(b), this question is more squarely presented.

no prejudgment as to this issue and simply notes that it will benefit from further briefing.

Accordingly,

**IT IS ORDERED** that the FTC's motion for contempt sanctions (First Action, Doc. 106) is **denied without prejudice**.

Dated this 22nd day of March, 2022.

Dominic W. Lanza
United States District Judge