**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Federal Trade Commission,

Plaintiff,

v.

Netforce Seminars, et al.,

Defendants.

No. CV-00-02260-PHX-DWL

**ORDER**

Pending before the Court is a motion by Jay Noland, Scott Harris, and Thomas Sacca (together, "the Contempt Defendants") for an order to show cause why the Federal Trade Commission ("FTC") and several current and former FTC employees should not be held in civil contempt.  (Doc. 123.)  For the following reasons, the motion is denied.

## RELEVANT BACKGROUND

In 2000, the FTC initiated this action, which will be referred to as "the First Action," by filing a complaint that charged Noland with violating the FTC Act by operating a multi-level marketing business as an illegal pyramid scheme.  (First Action, Doc. 1.)

On July 2, 2002, Noland and the FTC resolved the First Action by entering into a settlement agreement.  (First Action, Doc. 66.)  The agreement, which took the form of a stipulated permanent injunction, included express acknowledgements that Noland "entered into a stipulation in the form of this Order freely, but without admitting any wrongdoing" and that "[t]his Order shall not be construed as an admission or finding of guilt or wrong doing on the part of" Noland.  (*Id.* at 2.)  As described in more detail in other orders in this

action, the stipulated permanent injunction restrains Noland's future conduct in various ways, including by prohibiting him from participating "in any prohibited marketing scheme," from making any "false or misleading statement or misrepresentation of material fact" "in connection with . . . any multi-level marketing program," and from "providing to others the means and instrumentalities with which to make" such prohibited statements. (*See, e.g.*, First Action, Doc. 130 at 1-2.)

On July 22, 2002—a few weeks after the permanent injunction was docketed and the First Action was closed—the FTC issued a press release entitled "Pyramid Promoter Settles FTC Charges." (First Action, Doc. 123-1 at 100-01.) The body of the press release reads, in full, as follows:

> A leading salesman for an Internet-based business opportunity that promised easy income for investors in an Internet shopping mall network has agreed to settle Federal Trade Commission charges that the scheme was an illegal pyramid operation. The settlement will bar the defendant from engaging in pyramid schemes in the future, and from making misleading earnings claims or providing others with the means to make such claims if he participates in any multi-level marketing program.

> In November 2000, the FTC charged J.D. Noland and other principals and participants of the Mesa, Arizona-based Bigsmart program with operating an illegal pyramid scheme. According to the FTC complaint detailing the charges, Bigsmart marketed Internet theme "malls" that it claimed would enable investors to earn substantial income from commissions on products purchased through the Internet. The malls were a collection of links to retail sites maintained by independent third-party merchants, such as MarthaStewart.com, and to a "Superstore" maintained by Bigsmart. Bigsmart directed traffic to the malls through the personalized Bigsmart "welcome pages" to which members could purchase access for a $10 application fee and a $99.95 "hosting" fee. Although Bigsmart claimed that members would make substantial amounts of money by investing in its Internet shopping mall network, the scheme was structured in such a way that realizing continued financial gains would depend on ". . . the continued, successive recruitment of other participants," not on retail sales of products and services to the public, according to the FTC's complaint. The FTC charged that the claims that consumers who invested in Bigsmart would earn substantial income were false; that promotional materials that contained the false and misleading claims provided the means for others to deceive

- 2 -

consumers; and that Bigsmart was actually a pyramid scheme. All other defendants in the Bigsmart case previously settled the FTC charges. The settlement announced today ends the litigation with Noland.

The settlement bars the defendant from engaging in any future pyramid schemes.  It also bars him from:

- Misrepresenting the potential earnings or income of any multi-level marketing program;

- Misrepresenting the benefits a participant in a multi-level marketing program can receive; and

- Misrepresenting the amount of sales a participant could expect to make.

It also bars him from providing others with the "means and instrumentalities" with which to make false or misleading statements about multi-level marketing programs.  Based on financial statements provided by the defendant, a judgment in the amount of $104,748 will be suspended.

Should the Commission have evidence that the defendant made misrepresentations in the financial statements, the entire amount of the judgment, which represents his income from Bigsmart, will become immediately due.

The Commission vote to approve the settlement was 5-0.  The order was filed in U.S. District Court for the District of Arizona.  This case was brought with the invaluable assistance of the Offices of the Attorney General of Texas and the Wisconsin Department of Agriculture, Trade, & Consumer Protection, Division of Trade & Consumer Protection.

NOTE: A stipulated final judgment and order is for settlement purposes only and does not constitute an admission by the defendant of a law violation. Consent judgments have the force of law when signed by the judge.  Copies of the stipulated final judgment and order are available from the FTC's Web site at http://www.ftc.gov and also from the FTC's Consumer Response Center, Room 130, 600 Pennsylvania Avenue, N.W., Washington, D.C. 20580.  The FTC works for the consumer to prevent fraudulent, deceptive and unfair business practices in the marketplace and to provide information to help consumers spot, stop and avoid them.  To file a complaint, or to get free information on any of 150 consumer topics, call toll-free, 1-877-FTC-HELP (1-877-382-4357).  The FTC enters Internet, telemarketing and other fraud-related complaints into Consumer Sentinel, a secure, online database

- 3 -

available to hundreds of civil and criminal law enforcement agencies worldwide.

(FTC File No. X010066)

(Civil Action No. 00 2260 PHX FJM)

(*Id.*)

In May 2008, Noland personally wrote a letter to the FTC's associate director for marketing practices asking that the press release be taken down from the FTC's website. (First Action, Doc. 123-1 at 110.)  In the letter, Noland characterized the press release as slanderous and defamatory and stated that "if there is no admission of 'wrongdoing on my part,' why would you call me a 'Pyramid Promoter?'"  (*Id.*)  The FTC did not respond to this letter (*id.* at 6 ¶ 24) and the press release was not taken down from the FTC's website.

About 10 years later, on January 9, 2018, Noland's counsel wrote a letter to an FTC representative (Lisa Hone) renewing Noland's request that the press release be taken down from the FTC's website.   (*Id.* at 112-13.)   This letter stated that Noland "sent correspondence dated May 14, 2008 (copy enclosed) to the Associate Director for Marketing Practices requesting that this injustice be 'rectified immediately' by removing the link.  To date the defamatory reference to him as a 'Pyramid Promoter' has yet to be undone, despite the fact there was no admission of wrongdoing on his part as was expressly and unequivocally made clear in the Final Judgment signed by the Court, nor was there a finding by the Court in its Order's Injunctive Provisions to the effect that my client had 'promoted a pyramid.'"  (*Id.* at 113.)

On February 26, 2018, Noland's counsel wrote a similar letter to a different FTC representative (Peter Kaplan).  (*Id.* at 114-16.)

On March 1, 2018, Kaplan responded to Noland's counsel via email.  (*Id.* at 136-37.)  In this email, Kaplan wrote in relevant part as follows: "Thank you for your letter.  The FTC does not remove or modify press releases on FTC.gov unless a release is erroneous or inaccurate. . . .  If you believe [the] press release is erroneous or inaccurate, feel free to specify your reasons."  (*Id.*)

On March 5, 2018, Noland's counsel wrote a letter to a different FTC representative (James Kohm) renewing Noland's request that the press release be taken down.  (*Id.* at 138-40.)  It does not appear that Kohm ever responded to this letter.  (*Id.* at 7-8 ¶ 28.)

On January 8, 2020, the FTC initiated another action against Noland.  (*FTC v. Noland et al.*, CV-20-47-PHX-DWL.)  The operative complaint in that action, which will be referred to as "the Second Action," alleges that Noland, Harris, Sacca, and Lina Noland (together, "the Individual Defendants") operated a pair of multi-level marketing businesses called Success By Health ("SBH") and VOZ Travel as illegal pyramid schemes, made false statements in the course of operating those businesses, and violated various FTC rules in the course of operating those businesses.  (Second Action, Doc. 205.)

On January 13, 2020, the Court granted the FTC's request for an *ex parte* temporary restraining order in the Second Action, which had the effect of freezing the Individual Defendants' assets and appointing a receiver to assume control over the entities that operated SBH and VOZ Travel.  (Second Action, Docs. 19, 20, 38.)

On January 17, 2020, the FTC filed a motion for an order to show cause ("OSC") why Noland should not be held in civil contempt in the First Action.  (First Action, Docs. 74, 78.)  In a nutshell, the FTC's theory was that Noland's challenged conduct in the Second Action also amounted to a violation of the permanent injunction issued in the First Action.  (*Id.*)  The FTC later expanded the scope of its OSC request to include Harris and Sacca.  (First Action, Doc. 91.)

In February 2020, following an evidentiary hearing, the Court issued an order granting the FTC's motion for a preliminary injunction in the Second Action.  (Second Action, Doc. 106.)  The Court found that the FTC was likely to succeed on the merits of its claims that SBH functioned as a pyramid scheme and that the Individual Defendants misrepresented the income potential of SBH affiliates.  (*Id.* at 10-25.)

In July 2020, the Court issued an order clarifying that it would postpone resolving the FTC's request for contempt sanctions in the First Action until after the Second Action reached a more developed stage.  (First Action, Doc. 101.)

1    In June 2021, the FTC formally moved for civil contempt sanctions in the First

2  Action against the Contempt Defendants.  (First Action, Doc. 106.)  The motion later

3  became fully briefed.  (First Action, Docs. 112, 114.)

4    In September 2021, the Court issued an order granting the FTC's motion for

5  summary judgment as to liability in the Second Action.  (Second Action, Doc. 406.)

6    In November 2021, the Court issued an order denying the FTC's motion for

7  monetary remedies in the Second Action.  (Second Action, Doc. 438.)

8    On February 24, 2022, the Contempt Defendants filed the motion now pending

9  before the Court—a request for an order to show cause ("OSC") why the FTC, Hone,

10  Kaplan, and Kohm should not be held in civil contempt in the First Action.  (First Action,

11  Doc. 123.)[1]

12    On March 10, 2022, the FTC filed an opposition.  (First Action, Doc. 126.)

13    On March 16, 2022, the Contempt Defendants filed a reply.  (First Action, Doc.

14  128.)

15    On March 22, 2022, the Court issued an order denying, without prejudice, the FTC's

16  motion for civil contempt sanctions against the Contempt Defendants in the First Action.

17  (First Action, Doc. 130.)

18    **DISCUSSION**

19  I.    <u>Legal Standard</u>

20    "There can be no question that courts have inherent power to enforce compliance

21  with their lawful orders through civil contempt."  *Shillitani v. United States*, 384 U.S. 364,

22  370 (1966).  "The standard for finding a party in civil contempt is well settled: The moving

23  party has the burden of showing by clear and convincing evidence that the contemnors

24  violated a specific and definite order of the court.  The burden then shifts to the contemnors

25  to demonstrate why they were unable to comply."  *FTC v. Affordable Media, LLC*, 179

26  F.3d 1228, 1239 (9th Cir. 1999) (citation omitted).  "Willfulness is not an element of civil

27

28  _____
   [1]    The Contempt Defendants' request for oral argument is denied because the issues
   are fully briefed and argument would not assist the decisional process.  *See* LRCiv 7.2(f).

1    contempt." *United States v. Asay*, 614 F.2d 655, 661 (9th Cir. 1980).

2          As for remedies, "[j]udicial sanctions in civil contempt proceedings may, in a proper

3    case, be employed for either or both of two purposes; to coerce the defendant into

4    compliance with the court's order, and to compensate the complainant for losses sustained.

5    Where compensation is intended, a fine is imposed, payable to the complainant.  Such fine

6    must of course be based upon evidence of complainant's actual loss, and his right, as a civil

7    litigant, to the compensatory fine is dependent upon the outcome of the basic controversy."

8    *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947) (internal

9    citation omitted).

10   II.    The Parties' Arguments

11          The Contempt Defendants request the issuance of an OSC as to why the FTC, Hone,

12   Kaplan, and Kohm should not be held in civil contempt for violating a court order—the

13   2002 stipulated judgment in the First Action.  (First Action, Doc. 123 at 14.)  The Contempt

14   Defendants' theory is that the FTC's issuance of a post-lawsuit press release that

15   characterized Noland as a "pyramid promotor" was improper because the stipulated

16   judgment expressly noted that Noland was not admitting any wrongdoing.  (*Id.* at 13

17   ["There is no question that the FTC made a promise that [Noland's] settlement was without

18   admission of 'any wrongdoing' to J. Noland and then broke that promise by ruining his

19   reputation."].)  The Contempt Defendants acknowledge that the press release included, in

20   its final paragraph, an acknowledgement that the stipulated judgment did "not constitute

21   an admission by the defendant of a law violation" but argue that "the net impression created

22   by the Press Release leads the average person to believe that [Noland] was a criminal who

23   settled charges as a 'Pyramid Promoter.'"  (*Id.* at 11-12.)  The ultimate sanctions sought by

24   the Contempt Defendants are (1) a finding that the FTC's request for contempt sanctions

25   against them in the First Action is "barred by the FTC's unclean hands" and (2) the

26   imposition of a daily $1,000 fine until the FTC removes the press release from its website.

27   (*Id.* at 3.)

28          The FTC opposes the Contempt Defendants' motion.  (First Action, Doc. 126.)

First, the FTC contends the issuance of the press release did not violate the stipulated judgment for two reasons: (1) the stipulated judgment only bound Noland, not the FTC, and the "no admission of wrongdoing" clauses were simply factual recitations (*id.* at 3); and (2) at any rate, the press release "makes no false claims" because the statements describing Noland as a pyramid promoter "are and were true" and the press release "does [not] suggest that Noland admitted wrongdoing" (*id.* at 4-6). Second, the FTC contends that one of the sanctions sought by the Contempt Defendants—a finding that the FTC is barred via the unclean-hands doctrine from pursuing its own request for civil contempt sanctions in the First Action—is improper because it is "neither compensatory nor coercive and is thus unavailable as a civil contempt remedy." (*Id.* at 6-8.) Third, the FTC contends the Contempt Defendants' request is barred by the doctrine of laches because "Noland's delay—whether counted from 2002, when the FTC published its press release, or 2008 or 2018, when Noland complained to the FTC about the release—is plainly unreasonable" and the passage of time has interfered with the FTC's ability to investigate and rebut some of the Contempt Defendants' factual assertions. (*Id.* at 8-11.) Finally, the FTC notes that, to the extent the Contempt Defendants are seeking an OSC as to individual FTC employees (Hone, Kaplan, and Kohm), those individuals are unrepresented non-parties who have not been served. (*Id.* at 2 n.1.)

In reply, the Contempt Defendants first argue that the FTC's "claim of laches is devoid of merit" because the press release remains on the FTC's website to this day and the FTC retains the ability to contact Hone, Kaplan, and Kohm. (First Action, Doc. 128 at 2-5.) Next, the Contempt Defendants identify various reasons why FTC should be deemed bound by the stipulated judgment, including the provision concerning Noland's non-admission of wrongdoing. (*Id.* at 5-8.) Next, in response to the FTC's assertion that everything in the press release was true, the Contempt Defendants argue that "Noland does not have to prove falsity of the FTC's *underlying* allegations to establish that the FTC falsely mischaracterized a settlement without admission 'of any wrongdoing' by stating that he was a 'Pyramid Promoter' who settled 'charges.'" (*Id.* at 8.) Next, the Contempt

Defendants concede that Hone, Kaplan, and Kohm cannot be held liable for contempt unless and until they are served.  (*Id.* at 8-9 & n.4.)  Finally, the Contempt Defendants contend their request for a daily fine until the FTC removes the press release from its website is a permissible contempt sanction because it is coercive in nature.  (*Id.* at 8-10.)

III.    Discussion

A party seeking the imposition of civil contempt sanctions "has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court."  *Affordable Media, LLC*, 179 F.3d at 1239.  The Contempt Defendants' request for the issuance of an OSC fails under this standard because there is no evidence, let alone clear and convincing evidence, that the FTC violated the stipulated judgment in the First Action by issuing and maintaining the challenged press release.

The stipulated judgment made clear that Noland was not admitting any wrongdoing or liability.  Thus, if the FTC had issued a press release following the entry of the stipulated judgment falsely stating that Noland had *admitted* being a pyramid-scheme promoter, the propriety of the FTC's conduct would present a closer call.  But the press release did no such thing—it merely set forth the FTC's own characterization of Noland as a "pyramid promoter" before providing an accurate summary of the underlying allegations against Noland, accurately stating that the parties had agreed to enter into a settlement to resolve those charges, and accurately stating that "[a] stipulated final judgment and order is for settlement purposes only and does not constitute an admission by the defendant of a law violation."  It is difficult to understand how those statements could be said to violate the provisions of the stipulated judgment.  Critically, the stipulated judgment did not contain a non-disparagement clause or otherwise preclude the FTC from publicly advancing its views concerning the merits of its since-resolved allegations against Noland.

In many respects, this case is similar to *Trudeau v. FTC*, 456 F.3d 178 (D.C. Cir. 2006).  There, the FTC brought an enforcement action against Trudeau, an infomercial producer, and also accused Trudeau of violating a consent order issued in an earlier case.  *Id.* at 180.  In 2004, the parties agreed to resolve all of the FTC's allegations via the

issuance of a stipulated permanent injunction and final order.  *Id.* at 180-81.  That order, like the stipulated judgment here, contained provisions clarifying that Trudeau "expressly den[ies] any wrongdoing or liability" and that "[t]here have been no findings or admissions of wrongdoing or liability."  *Id.* at 181 (alterations in original).  Five days after the entry of the stipulated order, the FTC issued a press release.  *Id.* at 181-82.  Although the press release contained a quotation from an FTC official that characterized Trudeau as a "habitual false advertiser[]" who had "misled American consumers for years," it also noted that Trudeau had "'agreed' . . . to "'settle' the FTC's charges" and that the stipulated order was "for settlement purposes only and does not constitute an admission by the defendants of a law violation."  *Id.* at 181-82, 195-96.  Afterward, Trudeau sued the FTC under a variety of theories, including that the press release was false and misleading.  *Id.*  at 180. The district court dismissed Trudeau's claims and the D.C. Circuit affirmed, holding in relevant part that the press release did not "erroneously impl[y] that the settlement represents a judicial finding that Trudeau was a habitual false advertiser" and instead permissibly set forth the FTC's own views concerning Trudeau.  *Id.* at 195-97.  This was true, the court held, even though the press release "fail[ed] to expressly state, as the 2004 Final Order did, that there had been 'no findings or admissions of wrongdoing or liability' with respect to Trudeau."  *Id.* at 196.

Here, similarly, the Court concludes that the FTC's press release was not issued in violation of the 2002 stipulated judgment.  Given this conclusion, there is no need to address the FTC's other arguments as to why the request for an OSC should be denied.

Accordingly,

**IT IS ORDERED** that the Contempt Defendants' motion for an OSC (First Action, Doc. 123) is **denied**.

Dated this 28th day of March, 2022.

Dominic W. Lanza
United States District Judge