**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission, | No. CV 00-02260-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Netforce Seminars, et al., | |
| Defendants. | |

Pending before the Court is a motion by Jay Noland, Scott Harris, and Thomas Sacca (together, "the Contempt Defendants") to dismiss the FTC's contempt claims in this action under Rule 12(b)(1) of the Federal Rules of Civil Procedure or, in the alternative, to allow the Contempt Defendants to assert an unclean hands defense and/or to rely on certain evidence. (Doc. 127.) For the following reasons, the motion is denied.

## RELEVANT BACKGROUND

In 2000, the FTC initiated this action, which will be referred to as the "First Action," by filing a complaint that charged Noland with violating the FTC Act by operating a multi-level marketing business as an illegal pyramid scheme. (First Action, Doc. 1.)

On July 2, 2002, Noland and the FTC resolved the First Action by entering into a settlement agreement that included a stipulated permanent injunction. (First Action, Doc. 66.) As described in more detail in other orders, the injunction restrains Noland's future conduct in various ways, including by prohibiting him from participating "in any prohibited marketing scheme," from making any "false or misleading statement or misrepresentation

of material fact" "in connection with . . . any multi-level marketing program," and from "providing to others the means and instrumentalities with which to make" such prohibited statements.  (*See, e.g.*, First Action, Doc. 130 at 1-2.)

On January 8, 2020, the FTC initiated another action against Noland.  (*FTC v. Noland et al.*, CV-20-47-PHX-DWL.)  The operative complaint in that action, which will be referred to as the "Second Action," alleges that Noland, Harris, Sacca, and Lina Noland (together, "the Individual Defendants") operated a pair of multi-level marketing businesses called Success By Health ("SBH") and VOZ Travel as illegal pyramid schemes, made false statements in the course of operating those businesses, and violated various FTC rules in the course of operating those businesses.  (Second Action, Doc. 205.)

On January 17, 2020, the FTC filed a motion for an order to show cause ("OSC") why Noland should not be held in civil contempt in the First Action.  (First Action, Docs. 74, 78.)  In a nutshell, the FTC's theory was that Noland's challenged conduct in the Second Action also amounted to a violation of the permanent injunction issued in the First Action.  (*Id.*)  After Noland filed a response to the motion for an OSC (First Action, Doc. 82), the FTC expanded the scope of its OSC request to include Harris and Sacca.  (First Action, Doc. 91.)  Harris and Sacca then filed a response.  (First Action, Doc. 98.)

On July 6, 2020, the Court issued an order granting the FTC's request for an OSC in relevant part.  (First Action, Doc. 101.)  Among other things, the Court held that the FTC properly filed its OSC request in the same action in which the underlying injunction was issued and, thus, "the Court will not require the FTC to file a new action or amend its complaint in the [Second Action]."  (*Id.* at 3.)

In April 2021, the legal landscape underlying some of the FTC's claims shifted by virtue of the Supreme Court's decision in *AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341 (2021). There, the Supreme Court held—contrary to the rule that had previously been in place in the Ninth Circuit—that the FTC may not obtain "equitable monetary relief such as restitution or disgorgement" pursuant to its authority under § 13(b) of the FTC Act. *Id.* at 1344.  Following this development, the FTC clarified that it is only seeking monetary

remedies in the Second Action pursuant to its rules-based claims, which are claims under § 19 of the FTC Act, and is not seeking monetary remedies in the Second Action pursuant to its pyramid-scheme and false-statement claims, which are claims under § 13(b) of the FTC Act.  (Second Action, Docs. 351, 365.)

On June 23, 2021, the FTC formally moved for contempt sanctions against the Contempt Defendants in the First Action.  (First Action, Doc. 106.)  The motion later became fully briefed.  (First Action, Docs. 112, 114.)

On March 15, 2022, the Contempt Defendants filed the pending motion.  (First Action, Doc. 127.)[1]

On March 22, 2022, the Court issued an order denying, without prejudice, the FTC's motion for civil contempt sanctions in the First Action.  (First Action, Doc. 130.)  Although the Court acknowledged that "[t]he FTC has established that the Contempt Defendants violated some provisions of the permanent injunction," the Court also found that "the FTC has not established, at least at this stage of the proceedings, that the Contempt Defendants committed certain other alleged violations of the permanent injunction."  (*Id.* at 7-9.)  The Court continued that, "[b]ecause the FTC has not established all of the violations alleged in its motion, it follows that the FTC has not established an entitlement to the $7,012,913.25 compensatory contempt award sought in its motion.  To calculate that sum, the FTC added together the net revenues earned from both SBH and VOZ Travel.  But because the SBH-related violations have not been established, the FTC's requested sum is necessarily overstated."  (*Id.* at 9.)  Given this determination, the Court found it "unnecessary at this juncture to decide whether the FTC's approach to calculating financial remedies is flawed for other reasons," including (1) the failure to "account for the inherent value of the products that consumers actually received and consumed" and (2) the "unresolved questions" arising from *AMG Capital* "about the FTC's authority to pursue a compensatory civil sanction based on new § 13(b) violations that also violate an injunction issued in a previous § 13(b) enforcement action (such as the permanent injunction issued in the First

---

[1]    The Contempt Defendants' request for oral argument is denied because the issues are fully briefed and argument would not assist the decisional process. See LRCiv 7.2(f).

1   Action)," and simply noted that those issues "will benefit from further briefing." (*Id.* at 9-
2   11.)
3       On March 28, 2022, the FTC filed a response to the Contempt Defendants' pending
4   motion. (First Action, Doc. 132.)
5       On April 4, 2022, the Contempt Defendants filed a reply. (First Action, Doc. 135.)
6                                   **DISCUSSION**
7   I.   <u>Subject-Matter Jurisdiction</u>
8        A.   **The Parties' Arguments**
9        The Contempt Defendants' primary argument is that because the Supreme Court
10  held in *AMG Capital* that the FTC cannot recover monetary damages pursuant to § 13(b)
11  of the FTC Act, and because the injunction in the First Action was predicated on claims
12  under § 13(b) of the FTC Act, "[t]he FTC's attempt to indirectly seek monetary redress
13  through its contempt claims must be dismissed for lack of subject matter jurisdiction."
14  (Doc. 127 at 2.) The Contempt Defendants elaborate: "The losses claimed by the FTC are
15  derived from the 2002 Stipulated Order, which is based solely on Section 13(b), which
16  does not allow courts to impose monetary redress. The *AMG* ruling bars any . . . monetary
17  recovery based on Section 13(b) either directly through lawsuits, or indirectly through a
18  contempt action. The FTC can put lipstick on this pig, but it is still a pig." (*Id.* at 16.)
19       The FTC opposes the Contempt Defendants' request for dismissal. (Doc. 132 at 2-
20  7.) The FTC argues that the Court "plainly has jurisdiction" to enforce the permanent
21  injunction issued in the First Action via the exercise of its civil contempt power, that *AMG
22  Capital* does not undermine the Court's authority to impose monetary sanctions based on
23  violations of the permanent injunction (a conclusion that two other district courts have
24  already reached), and that net revenues remain a permissible compensatory contempt
25  sanction under Ninth Circuit law. (*Id.*)
26       In reply, the Contempt Defendants argue that "[t]he Court should dismiss the Order
27  to Show Cause . . . because the Court lacks the subject matter jurisdiction necessary to
28  make such a ruling." (Doc. 135 at 1.) The Contempt Defendants assert in a footnote that

"[w]hether Rule 12 is a correct vehicle for the Court to dismiss this action is irrelevant . . . because a Court must have subject matter jurisdiction to preside over a lawsuit." (*Id.* at 1 n.1.)   The Contempt Defendants also argue that one of the cases cited by the FTC is distinguishable. (*Id.* at 2.)   Finally, the Contempt Defendants disagree with the FTC's arguments concerning the permissibility of net-revenue sanctions. (*Id.* at 7-10.)

B.   **Analysis**

There is a disconnect between the substantive argument raised in the Contempt Defendants' motion (*i.e.,* the FTC's request for monetary contempt sanctions in the First Action is barred by *AMG Capital*) and the relief they seek (*i.e.,* a dismissal based on the absence of subject-matter jurisdiction).   The Court unquestionably has subject-matter jurisdiction to entertain a claim for civil contempt sanctions based on the violation of a permanent injunction it previously issued. *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.").   Although the parties debate whether the FTC's theory of damages in the First Action is foreclosed by *AMG Capital*, this debate does not implicate the Court's subject-matter jurisdiction.   The FTC's arguments on this point are not insubstantial, implausible, or otherwise so completely devoid of merit as not to involve a federal controversy.   Thus, even assuming the Contempt Defendants are correct about the meaning of *AMG Capital,* this would simply mean the FTC's request for relief in the First Action should be denied on the merits (as opposed to being dismissed for want of subject-matter jurisdiction). *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.,* the courts' statutory or constitutional *power* to adjudicate the case. . . .   Jurisdiction is not defeated by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. . . .   Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of

merit as not to involve a federal controversy.") (cleaned up).

The Court acknowledges that, at some point in the near future, it may be necessary to decide whether the FTC's request for monetary sanctions in the First Action is foreclosed by *AMG Capital*.  But the only request now properly before the Court is the Contempt Defendants' request for dismissal for lack of subject-matter jurisdiction.  As explained above, that request lacks merit.

II.   <u>Unclean Hands</u>

 A.   **The Parties' Arguments**

One of the Contempt Defendants' alternative requests is to "allow them to add additional defenses asserting the unclean hands doctrine." (Doc. 127 at 1.)  The Contempt Defendants contend that the unclean hands doctrine is applicable here for three reasons: first, because the FTC "knew full well" that it lacked authority to pursue monetary redress under § 13(b) of the FTC Act but persuaded the appellate courts to adopt a contrary, incorrect interpretation for "almost four decades" until the Supreme Court finally decided *AMG Capital* (*id.* at 2-4); second, because the FTC breached the settlement agreement in the First Action by issuing a press release that characterized Noland as a "pyramid promoter" (*id.* at 5-13); and third, because the FTC failed to cite a controlling authority— the Ninth Circuit's decision in *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1993)— when disclosing its damages computations or briefing the issue of damages in its summary judgment motion (*id.* at 13-15).

The FTC opposes the Contempt Defendants' request to add an unclean hands defense.  (Doc. 132 at 7-11.)  As for its litigation history, the FTC argues that the "Contempt Defendants cite no authority establishing that legal advocacy urging courts to adopt a particular statutory interpretation can be an 'unconscionable act' demonstrating unclean hands" and note that "every court of appeals that examined the issue for nearly 40 years agreed with the FTC's reading of Section 13(b)."  (*Id.* at 9.)  Next, the FTC argues that the press release did not contain any false statements or violate the settlement agreement.  (*Id.* at 9-10.)  Finally, the FTC notes that it *did* cite *Figgie* in its damages

disclosures and summary judgment briefing and argues that the parties' disagreement over *Figgie*'s applicability does not amount to unclean hands.  (*Id.* at 10-11.)

In reply, the Contempt Defendants argue that the FTC's litigation history before *AMG Capital* amounted to "decid[ing] to mislead the courts and hope that they got a good ruling" and that "[i]t falls on this Court to protect the public because the FTC has shown no remorse or regret for its manifest infidelity to the statutes it is sworn to enforce" (Doc. 135 at 2-6); that the press release was misleading (*id.* at 7 n.7); and that although the FTC may have cited *Figgie* in its disclosures and summary judgment briefing, the FTC still displayed a "lack of candor about the standard of proof for damages" (*id.* at 6-7).

B.   **Analysis**

As a threshold matter, the Contempt Defendants' request for permission to "add" an unclean hands defense is procedurally confusing.  Because this is a civil contempt proceeding premised on alleged violations of a permanent injunction previously issued in this case, the FTC did not file a formal complaint accusing the Contempt Defendants of the alleged violations and the Contempt Defendants did not file an answer.  Instead, the Court simply granted the FTC's request to issue an OSC.  (Doc. 101.)  The next step will be to hold an evidentiary hearing to resolve the FTC's contempt allegations in the First Action (as well as its claims in the Second Action) on the merits.  (Doc. 134 at 3 ["This case has been pending for over two years, discovery is closed, and a consolidated evidentiary hearing in the First and Second Actions will need to take place regardless of how the reconsideration motion is resolved."].)   It is therefore unclear what the Contempt Defendants are asking for permission to do—there is no answer in the First Action to which an unclean hands defense might be formally added.

At any rate, the Contempt Defendants' arguments fail on the merits.  The FTC did not engage in conduct remotely implicating the unclean hands doctrine by successfully persuading an array of federal courts over a four-decade span to adopt a particular interpretation of the FTC Act.  Although that interpretation turned out to be wrong, being wrong about a debatable issue of statutory interpretation that dozens of federal judges

found persuasive does not come close to qualifying as "wrongfulness, willfulness, bad faith, or gross negligence." *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1029 (9th Cir. 2018).  As for the press release, the Court has already determined that it "was not issued in violation of the 2002 stipulated judgment."  (Doc. 133 at 9-10.) Finally, as for *Figgie*, the Contempt Defendants have established, at most, that the FTC took one side of a good-faith debate about a disputed legal issue, which again does not come close to qualifying as conduct that might support an unclean hands defense.

III.     <u>New Evidence</u>

      A.     **The Parties' Arguments**

The Contempt Defendants' final alternative request is for the Court to "consider the Declarations of Tevis Sherfield and J. Noland in support of their defense to the contempt charges."  (Doc. 127 at 1.)  According to the Contempt Defendants, these declarations "establish that affiliates were not misled on issues involving income potential but were provided hypothetical examples based on SBH's compensation plan."  (*Id.* at 15.)

In response, the FTC argues that although the Contempt Defendants "do not explain in what context they want the Court to consider the declarations," it appears "they want the Court to consider them when ruling on the FTC's Motion for Contempt Sanctions."  (Doc. 132 at 11.)  The FTC argues that, because that motion has now been denied, the Contempt Defendants' request is moot.  (*Id.*)

In reply, the Contempt Defendants do not discuss the declarations.  (Doc. 135.)

      B.     **Analysis**

The Court agrees with the FTC that the Contempt Defendants' request related to the Sherfield and Noland declarations is moot.  Other than the motion being addressed in this order, there are no other pending motions in the First Action.

…

…

…

…

Accordingly,

**IT IS ORDERED** that the Contempt Defendants' motion to dismiss and to supplement briefing (Doc. 127) is **denied**.

Dated this 18th day of May, 2022.

_____
Dominic W. Lanza
United States District Judge